UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| J&J WEHNER, INC., JOSEPH WEHNER and JEANNIE WEHNER,  )<br>Plaintiffs,  )<br>v.  )<br>H&L PLATING & GRINDING, INC., HOWARD LARSEN and LOUISE LARSEN,  )<br>Defendants and Counterclaimants.  ) | CASE NO. 1:05-cv-0481-DFH-JMS |

ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
REQUEST FOR EQUITABLE RELIEF

Defendant H&L Plating & Grinding, Inc. operated a chrome plating and grinding business for over two decades at a site in Muncie, Indiana. In April 2003, plaintiff J&J Wehner, Inc., contracted to purchase H&L Plating & Grinding's chrome plating operation, including the land, building, equipment, and inventory. Plaintiffs Joseph and Jeannie Wehner are the sole shareholders of J&J Wehner, Inc. Defendants Howard and Louise Larsen are the sole shareholders of H&L Plating & Grinding, Inc. The Larsens are the grandparents of Jeannie Wehner. The court refers to the corporate and individual plaintiffs as the Wehners and to the corporate and individual defendants as the Larsens.

The Wehners continued to operate the business under the name H&L Plating & Grinding. Several months after taking over, the Wehners learned that

the site might be contaminated with high levels of chromium and hexavalent chromium. After some initial investigation, the Wehners concluded in March 2004 that the Larsens were probably responsible for the contamination. The Wehners stopped making payments to the Larsens on the promissory note and non-competition agreement executed between the parties at the time of sale. The Wehners filed this suit to recover remediation costs pursuant to the federal Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a). Under the court's supplemental jurisdiction, the Wehners also seek relief under state environmental laws and under the common law for the Larsens' alleged breach of contract and fraud in the inducement of the contract.

The Larsens then filed a counterclaim alleging that the Wehners breached the promissory note and non-competition agreement when they stopped making payments in 2004 on the note and 2005 on the non-competition agreement. The Larsens have filed a motion for summary judgment on the counterclaim. They argue that the Wehners' promises to make the payments are unconditional and may not be avoided by the Wehners' allegations of their claims. Alternatively, the Larsens seek a preliminary injunction ordering the Wehners to pay the disputed funds either directly to the Larsens or into the court to hold pending final judgment. As explained below, the Larsens' motion for summary judgment and their request for equitable relief are denied.

As required when deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence in the light reasonably most favorable to the non-moving parties. See Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Many relevant facts are undisputed, but many are disputed. Because the Larsens have moved for summary judgment, some of the facts stated in this entry are not necessarily true, but they reflect the conflicting evidence in the light reasonably most favorable to the Wehners as the non-moving parties.

*Facts for Summary Judgment*

When the Wehners agreed to purchase the H&L Plating operation from the Larsens in April 2003, the parties executed three agreements. First, the Agreement for Purchase and Sale ("the Purchase Agreement") was the written contract for the Larsens' sale of the H&L Plating assets and real estate to the Wehners. See Cmplt., Ex. A. Second, in the Installment Promissory Note, J&J Wehner, Inc. agreed to pay H&L Plating & Grinding, Inc. the sum of $865,476.50 in monthly installments of $8,425.92 from May 2004 to May 2006, with the balance of the principal due on May 26, 2006. Amended Answer, Ex. B. Third, H&L Plating & Grinding, Inc. and Howard and Louise Larsen entered into the Non-Competition Agreement with J&J Wehner, Inc. Amended Answer, Ex. C. Under the Non-Competition Agreement, the Larsens agreed not to engage in a metal plating business in North America (except as an employee or agent of the

-3-

Wehners) for three years in exchange for $100,000 at signing and two additional payments of $60,000 to be paid in April 2004 and April 2005.

After the Wehners purchased the business, several employees indicated that the Larsens had disposed of chromium waste on the site. The Wehners undertook some initial investigation of contamination and discovered very high levels of chromium and hexavalent chromium in the soil and groundwater. In April 2004, the Wehners were informed that adjoining property was contaminated with chromic acid. The Wehners stopped making the monthly payments on the Installment Promissory Note beginning on March 28, 2004, and have made no further payments. The Wehners also did not make the April 2005 payment of $60,000 under the Non-Competition Agreement. The Wehners have received estimates that remediation of the H&L Plating property and adjoining properties could cost between $1.5 million and $2.25 million. Additional facts are noted as relevant, keeping in mind the standard that applies to summary judgment.

*Discussion*

I.   *Breach of the Promissory Note and Non-Competition Agreement*

In their counterclaim, the Larsens allege that the Wehners have breached the Installment Promissory Note by failing to make payments due. The Larsens assert that the promise to pay in the Note is unconditional, so that any alleged breaches of the Purchase Agreement could not excuse failure to pay under the

Note.  The Larsens also claim that the Wehners have breached the Non-Competition Agreement by failing to make the $60,000 payment due in April 2005.

As an affirmative defense to the Larsens' counterclaim, the Wehners allege that they were fraudulently induced to sign both the Installment Promissory Note and Non-Competition Agreement.  The heart of the Promissory Note is an unconditional promise to pay according to its terms.  See Ind. Code § 26-1-3.1-106(a).  If the Promissory Note were in the hands of a holder in due course, the Wehners' defense would not have merit.  See Ind. Code § 26-1-3.1-305(a)(1)(C) (defense of fraud to claim by holder in due course limited to "fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms").

Because the Larsens are not holders in due course, however, common law defenses, including fraud in the inducement, are available to the Wehners.  See Ind. Code § 26-1-3.1-306 (holder who is not "holder in due course" takes instrument "subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds"); *Gonderman v. State Exchange Bank*, 334 N.E.2d 724, 727-30 (Ind. App. 1975) (reversing judgment for holder of note who was not "holder in due course," and holding as a matter of law that defense of fraud in inducement had been established); cf. *Firth v. Farmer-Citizens Bank*, 460 N.E.2d 191, 192 (Ind. App. 1984) (because bank was holder in due course, common law

defenses to suit on instrument were not available to obligor); *Woodsmall v. Myers*, 158 N.E. 646, 647 (Ind. App. 1927) (defense of fraud in inducement was available if holder of note was not a purchaser in good faith; affirming verdict for defendant where good faith presented question of fact for jury to resolve); see generally *Herzog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062, 1067 (7th Cir. 1992) (reversing judgment for holder of note; under Indiana enactment of UCC, later amended, holder of promissory note who is not "holder in due course" takes the note subject to all defenses of any party which would be available in an action on a simple contract).

It is well established that fraud in the inducement is a defense to a suit for breach of contract. *America's Directories Inc. v. Stellhorn One Hour Photo, Inc.*, 833 N.E.2d 1059, 1066 (Ind. App. 2005) (allowing evidence of prior oral representations to support defense of fraud in inducement where written contract contained integration clause). The defense of fraudulent inducement requires a party to prove the elements of a claim for fraud. *Precision Homes of Indiana, Inc. v. Pickford*, 844 N.E.2d 126, 131 (Ind. App. 2006). A claim of fraud requires proof of the following elements:

      (1) a material misrepresentation of a past or existing fact which,
      (2) was false,
      (3) was made with knowledge or in reckless ignorance of the falsity,
      (4) was relied upon by the complaining party, and
      (5) proximately caused the complaining party's injury.

*Anderson v. Indianapolis Ind. AAMCO Dealers Advertising Pool,* 678 N.E.2d 832, 837 (Ind. App. 1997); accord, *Precision Homes,* 844 N.E.2d at 131.

Giving the Wehners the benefit of conflicts in the evidence and the most favorable reasonable inferences, a genuine issue of material fact exists as to whether the Larsens fraudulently induced the Wehners to sign the Promissory Note and Non-Competition Agreement by warrantying as seller that "Seller has complied with, and is not in violation of, applicable federal, state or local statutes, laws and regulations (including environmental laws) affecting his properties or business." Purchase Agreement § 3.3(c). The Wehners claim that they relied on this representation when entering into the Purchase Agreement, and the court assumes that is so for purposes of summary judgment.[1]

The Wehners have also offered evidence indicating that the Larsens' warranty was false and that Mr. Larsen must have known it was false. The court must accept that evidence for purposes of summary judgment. Ronnie Booher –

---

[1] The Wehners have also offered evidence that Mr. Larsen orally represented the property was free from environmental problems, and that the Larsens had not disposed of hazardous materials on the property in violation of applicable environmental laws. The parties have debated whether the integration clause in the Purchase Agreement bars reliance on these oral assurances. It is not clear to the court that this particular integration clause applies to bar reliance on these oral assurances. In any event, the written warranty provides a sufficient basis for the fraudulent inducement defense, and evidence of other discussions between Mr. Larsen and Mr. Wehner is relevant to support the Wehners' assertions that they relied on the environmental warranty. See *America's Directories,* 833 N.E.2d at 1066 (allowing parol evidence to support defense of fraud in inducement of written contract with integration clause).

an employee whose tenure with H&L Plating & Grinding spanned both the Larsens' and Wehners' periods of control – testified in his affidavit that rinse water used to wash excess chromium from plated parts accumulated in an underground pit for years during the Larsens' control of the property.  Booher also testified that at one point during the Larsens' ownership, holes were drilled in the underground pit to drain some of the heavily contaminated liquid into the soil below.  Booher also testified that soluble oil/grinder coolant waste was disposed of on the ground outside the facility and that grinder sludge containing chromium and metal shavings was disposed of in the dumpster at the facility.  Terry Williamson, another H&L Plating & Grinding employee who worked for the Larsens and now works for the Wehners, testified that Mr. Larsen directed him to bury cans filled with chromic acid, chromium, and chrome shavings in the underground pit just mentioned.  Williamson also testified that Mr. Larsen directed him to dump drums of oil and water waste on the ground outside the facility.

The Wehners have also come forward with evidence that they relied on the warranty of compliance with environmental laws and that their reliance has caused them injury.  Treating all of this evidence as true, as the court must on summary judgment, a reasonable jury could find that the Larsens fraudulently induced the Wehners to sign the Promissory Note and concurrent Non-Competition Agreement.  Because this would provide the Wehners an affirmative defense to the claims for breach of both of these contracts, the Larsens' motion for summary judgment must be denied.

II.   *Request for Equitable Relief*

As an alternative to an immediate and final judgment in their favor, the Larsens seek a preliminary injunction ordering the Wehners to pay all amounts due and owing under the Installment Promissory Note and Non-Competition Agreement either directly to the Larsens or into an escrow account with the court. Rule 64 of the Federal Rules of Civil Procedure authorizes provisional remedies at the commencement of and during the course of an action for the purpose of securing satisfaction of the judgment ultimately to be entered in that action. Fed. R. Civ. P. 64; 11A Wright, Miller & Kane, Federal Practice and Procedure § 2931 (2d ed. 2005). The kinds of remedies and the circumstances under which they can be used are matters of state law. *Id.* The Larsens invoke one of Indiana's injunction statutes, Indiana Code § 34-26-1-5.[2]

---

[2]The statute provides:
(a) This section applies:
(1) when it appears by the complaint that the plaintiff is entitled to the relief demanded, and the relief or any part of the relief consists in restraining the commission or continuance of some act, the commission or continuance of which, during the litigation, would produce great injury to the plaintiff;
(2) when, during the litigation, it appears that the defendant is:
(A) doing;
(B) threatening;
(C) about to do; or
(D) procuring or suffering to be done;
some act in violation of the plaintiff's rights, respecting the subject of the action, and tending to render the judgment ineffectual; or
(3) when the relief or part of the relief demanded by the plaintiff consists in restraining proceedings upon any final order or judgment.
(b) An injunction may be granted to restrain an act or proceeding described in subsection (a) until the further order of the court. The injunction may, afterwards, be modified upon motion.

(continued...)

When seeking preliminary injunctive relief under Section 34-26-1-5, the moving party bears the burden of proving the necessary elements by a preponderance of the evidence. *Mayer v. BMR Prop., LLC*, 830 N.E.2d 971, 978 (Ind. App. 2005). The moving party must show that: (1) the moving party's remedies at law are inadequate; (2) the moving party has at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) the threatened injury to the moving party outweighs the potential harm to the non-moving party resulting from the granting of the injunction; and (4) the public interest would not be disserved. *Id.*[3]

The court is not persuaded that an injunction is warranted under Indiana law. First, the Larsens have an adequate remedy at law. In general, a party who "suffers only 'mere economic injury' is not entitled to injunctive relief because an award of post-trial damages is sufficient to make the party whole." *Jay County Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 692 N.E.2d 905, 909 (Ind. App. 1998). As *Jay County REMC* makes clear, however, there may be unusual cases in which the collection of damages may be "impossible, uncertain, or unusually difficult," so that preliminary injunctive relief should be available. *Id.* at 910 (affirming preliminary injunction ordering REMC to continue

---

[2](...continued)
Ind. Code § 34-26-1-5.

[3]These standards obviously parallel the standards applied under Rule 65 of the Federal Rules of Civil Procedure. See, *e.g., Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir. 1992). The court therefore need not explore fully in this case whether the court is applying state or federal law, or substantive or procedural law.

purchasing all electricity from electric cooperative under requirements contract). Even in *Jay County REMC*, however, the court did not order pretrial payment of a creditor on a disputed debt or an impoundment of money; the court ordered only continued performance under an executory contract. Neither that decision nor those citing it suggest that the Indiana courts are ready to routinely put in litigants' hands a procedural tool the Supreme Court of the United States has described as "the nuclear weapon of the law." See *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 329 (1999) (explaining that such pre-judgment injunctive relief on behalf of general creditors in United Kingdom practice had become "the nuclear weapon of the law," and holding that United States federal courts do not have the power to issue such relief under the Federal Rules of Civil Procedure); see also, *e.g., Tilley v. Roberson*, 725 N.E.2d 150, 154 (Ind. App. 2000) (affirming denial of preliminary injunction that would have continued insurance coverage; preliminary injunctive relief "should not be granted except in rare instances in which the law and the facts are clearly within the moving party's favor"); *Paul v. I.S.I. Services, Inc.*, 726 N.E.2d 318, 321-22 (Ind. App. 2000) (affirming preliminary injunction against sale or disposition of defendant's marital assets to protect ability of plaintiff to collect likely final judgment); *id.* at 323-25 (Staton, J., dissenting) (citing *Grupo Mexicano* and arguing that extraordinary relief should be limited to cases where plaintiff can show defendant is about to dissipate assets with intent to defraud creditors).

If the Larsens prevail on their counterclaim, the damages from the Wehners' breaches of contract would be entirely monetary and relatively easy to quantify. Though the Larsens assert a "legitimate concern" that the Wehners might not be ready to pay the full damages when due, that is often the case in civil litigation. Yet pre-trial relief effectively impounding money is – and should be – extremely rare. There is nothing out of the ordinary about this dispute. If the Larsens' theory for a preliminary injunction ordering payment were applicable here, the Wehners would also be able to use the same theory to seek their own preliminary injunction to secure payment from the Larsens of the damages the Wehners are seeking. There is no indication here that the risk of harm to the Larsens outweighs the risk of harm to the Wehners, or vice versa. In addition, on the merits, the Wehners have come forward with substantial evidence supporting their claims and their affirmative defense of fraudulent inducement. In other words, the Larsens have not shown that their case is so compelling as to justify use of "the nuclear weapon of the law," a pre-judgment injunction ordering payment of a general creditor or freezing assets to protect a general creditor.

*Conclusion*

Accordingly, defendants' motion for summary judgment and request for equitable relief (Docket No. 50) is hereby denied.

So ordered.

Date: March 30, 2007

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Mark Lee Abrell
DENNIS WENGER & ABRELL
abrellm@dwapc.com

Glenn David Bowman
STEWART & IRWIN
gbowman@silegal.com

Michael D. Chambers
SOMMER BARNARD ATTORNEYS, PC
mchambers@sommerbarnard.com

Frank J. Deveau
SOMMER BARNARD ATTORNEYS, PC
fdeveau@sommerbarnard.com

Brad R. Sugarman
SOMMER BARNARD ATTORNEYS, PC
bsugarman@sommerbarnard.com